[Crim. No. 498. First Appellate District.—August 9, 1915.]

## THE PEOPLE, Respondent, v. ALMOND HOLLOWAY, Appellant.

CRIMINAL LAW—MURDER—EVIDENCE—INTERLOCUTORY DECREE OF DIVORCE.—In a prosecution for murder of a wife by her husband, where the theory of the prosecution was that the killing was willful and deliberate and that the motive was founded in the fact that the community property of the deceased and the defendant had been awarded to the former by an interlocutory decree in divorce proceedings which had been instituted by her against the defendant upon the ground of the latter's extreme cruelty, proof of the pendency of the divorce proceedings was admissible because it tended in a measure to show the state of feeling existing between the parties at a time prior to the homicide, but it was error to admit the decree in evidence for all purposes. Such ruling, however, was without prejudice, although the decree declared the defendant had been guilty of extreme cruelty toward the deceased, where the record shows that there was an abundance of other evidence to the effect that defendant had been guilty of repeated acts of physical cruelty and brutality toward the deceased.

ID.—WITNESSES—CHILD OF TENDER YEARS—COMPETENCY OF—BURDEN OF PROOF.—The burden of showing the incompetency of a child as a witness, within the meaning of section 1880 of the Code of Civil Procedure, was upon the defendant, and in the absence of an affirmative showing of an abuse of discretion, the determination of the trial court as to the competency of the witness is conclusive on appeal.

ID.—IMPROPER QUESTIONS—WAIVER OF OBJECTION.—Objection that certain questions asked of witnesses were suggestive and called for conclusions is waived where the record shows that no objection was made to the questions until they had been answered and no motion to strike out made.

ID.—ILL TREATMENT OF DECEASED BY DEFENDANT—REMOTENESS OF TIME.—The trial court did not err in permitting evidence of de-

fendant's ill treatment of the deceased some four or five years prior to a reconciliation which it appears had been effected between them, as the remoteness of the defendant's conduct in this behalf in reference to the reconciliation was an objection which went to the weight of the evidence rather than to its admissibility.

ID.—HOMESTEAD PROPERTY—JUDGMENT VESTING SAME IN DEFENDANT— ADMISSION OF NONPREJUDICIAL.—In such a case, while the materiality of a judgment, obtained on the petition of the defendant, adjudicating the death of the deceased and vesting the title to homestead community property in the defendant, does not appear, its admission could not have prejudiced the defendant, where it uncontradictedly appeared that the procurement of the judgment was prompted by the necessity of clearing the title to the property to secure a loan to pay debts of the defendant and deceased.

APPEAL from a judgment of the Superior Court of Santa Clara County and from an order denying a new trial. W. A. Beasley, Judge.

The facts are stated in the opinion of the court.

James P. Sex, and Maurice J. Rankin, for Appellant.

U. S. Webb, Attorney-General, and John H. Riordan, Deputy Attorney-General, for Respondent.

LENNON, P. J.—The defendant in this case was charged, in an information filed in the superior court of Santa Clara County, with the crime of murder. Upon his trial he was convicted of murder in the first degree, and the penalty therefor, life imprisonment, was fixed by the jury.

Briefly stated the essential and practically undisputed facts of the case pertaining to the points presented in support of the appeal are these: The deceased was the wife of the defendant. The homicide occurred at the home of the defendant in Palo Alto. An autopsy upon the body of the deceased showed that she came to her death as the result of hemorrhage of the brain caused by gunshot wounds. Two bullets were found in the body of the deceased, "one of which passed through the right forearm . . . and entered to the right of the temple." This bullet fractured the skull of the deceased. The second bullet lodged in the brain of the deceased, and its point of entrance was found to be directly in the back of the head. The bullet wound in the right forearm of the deceased was

powder-marked. There was no eye-witness to the killing of
the deceased. The defendant, however, upon his trial ad-
mitted the killing, and attempted to justify it upon the ground
that he had fired the fatal shots while defending himself
against an assault which the deceased had made upon him
with a knife. In support of this defense the coat, shirt,
undershirt, and suspenders worn by the defendant at the time
of the killing were offered and received in evidence. The
front of the coat on the right and left sides showed the down-
ward cuts of a knife, and the back of the coat from the
collar almost down to the bottom seam showed similar cuts.
The overshirt and suspenders were likewise cut. The under-
shirt showed a cut or a tear, and all of the cuts when the
several garments were superimposed corresponded in width,
length, and direction.

In rebuttal of the defendant's claim of self-defense, Almond
H. Holloway, Jr., a son and the only child of the defendant
and the deceased, was called and sworn as a witness for the
prosecution. At the time of the trial this witness was seven
years old. At the time of the homicide he was six years old.
His testimony, as elicited upon direct and cross-examination,
was to the effect that he was in the rear yard of his home
near the gate when the first shots were fired. He heard three
shots. He was at the bottom of the rear stairs leading to the
house when he heard the third shot. The witness ran up the
stairs into a room of the house the door of which was open,
and there saw his father, the defendant, in a stooping position
cutting the back of his coat, which apparently was on the
floor, with a butcher knife. Upon the approach of the witness
the defendant ceased cutting the coat, and hung it on a nail
in the wall.

The theory of the prosecution was that the killing was will-
ful and deliberate, and that the motive for the killing was
founded in the fact that the community property of the de-
ceased and the defendant had been awarded to the deceased
by an interlocutory decree in divorce proceedings which had
been instituted by her against the defendant upon the ground
of the latter's extreme cruelty. In support of this theory the
prosecution offered in evidence the interlocutory decree in the
divorce proceedings, to which the defendant objected upon
the ground that it was incompetent, irrelevant, and imma-
terial. Thereupon the district attorney announced that the

purpose of the offer was to show that at the time of the kill-
ing, the community property of the deceased and the defend-
ant had been awarded to the deceased. The objection was
overruled, whereupon counsel for the defendant specifically
objected to the reading in evidence of any portion of the
decree which did not refer to and deal with the disposition
of the community property. The district attorney thereupon
in effect retracted his offer of the decree in evidence for the
limited purpose originally stated by him, and insisted that
the decree be received and read in evidence for all purposes.
The trial court in effect overruled the last objection of coun-
sel for the defendant by directing the district attorney to read
the entire decree in evidence, which in part declared that
it was grounded upon and granted because of the defendant's
extreme cruelty toward the deceased.

Proof of the pendency of divorce proceedings between the
defendant and the deceased was admissible because it tended
in a measure to show the state of feeling existing between the
defendant and the deceased at and prior to the homicide; but
the ruling of the trial court admitting the divorce decree in
evidence for all purposes was error (1 Michie on Homicide,
705, sec. 165, 2bb; 6 Ency. of Evidence, 718; *State* v. *Zellers,*
7 N. J. L. 220; *Monroe* v. *State,* 5 Ga. 85; *Binns* v. *State,*
46 Ind. 311; *Binns* v. *State,* 57 Ind. 46, [26 Am. Rep. 48] ;
*Pinchord* v. *State,* 13 Tex. App. 468; *Hedger* v. *State,* 144
Wis. 279, [128 N. W. 80]). The ruling, however, was without
prejudice to the defendant. While the reading in evidence
of that portion of the decree which declared that the defend-
ant had been guilty of extreme cruelty toward the deceased
might have suggested to the jury, as counsel for the defend-
ant contends, that the defendant had been in the habit of
inflicting physical violence upon the deceased, nevertheless
the defendant could not have been harmed by such suggestion
because, as the record shows, there was an abundance of other
uncontradicted evidence to the effect that the defendant had
been guilty of repeated acts of physical cruelty and brutality
toward the deceased.

There was no error in the ruling of the trial court which
permitted the child witness, Almond Holloway, Jr., to be
sworn and testify, over the objection of the defendant, as a
witness for the people. Upon the objection of the defendant
that the child was of such a tender age at the time of the

homicide as to be incapable of receiving and retaining just impressions of the facts concerning which he would be called upon to give evidence, he was subjected to a searching examination by the trial court and by counsel for the defendant as to his competency generally to be a witness, and that examination showed, we think, not only that he knew the difference between truth and falsehood and appreciated the moral obligation to speak the truth, but that his powers of observation, memory, and expression were developed to a degree which justified the trial court in permitting him to be a witness. The burden of showing the incompetency of the child as a witness within the meaning of section 1880 of the Code of Civil Procedure, was upon the defendant; and in the absence of an affirmative showing of an abuse of discretion the determination of the trial court as to the competency of the witness is conclusive upon us.

These observations apply with equal force to the objection that the trial court abused its discretion in permitting the child witness Frances Virginia Gray to testify for the people.

Conceding that certain questions propounded to the witness Alice B. Malloy were suggestive and called for a conclusion, still the record shows that no objection in several instances was made to these questions until after they had been answered. No motion to strike out was made, and in the absence of a timely objection, followed by a motion to strike out, error cannot be predicated upon the asking and answering of the questions referred to. The questions propounded to this witness generally called for testimony which tended to show the hostile relations which existed between the defendant and the deceased prior to the homicide, and during the course of her examination along these lines she was asked to "describe her (the deceased's) condition then (a month prior to the homicide)—her mental condition and appearance." This was objected to as irrelevant, incompetent, and immaterial, and calling for the conclusion of the witness. The objection was overruled, and the witness answered, "She seemed in a state of great terror . . . She was nervous and crying; she was trembling." A motion to strike out, based upon the stated grounds of the objection, was denied. It is not asserted here that the testimony elicited by the question objected to is not relevant or competent, but it is only urged that such testimony is not admissible because the defendant's

connection with the deceased's condition as described by the witness was not first shown in evidence. This in effect is an objection that no proper foundation had been laid for the introduction of the evidence in question; but conceding that such an objection would have been well taken in the court below, it was not made there, and consequently will not be entertained here.

Further along in her examination the same witness was asked the following question: "You observed the relationship between Mr. Holloway and Mrs. Holloway . . . did you?" and over the objection that the question was leading the witness answered, "I can only say that I know she feared him." In response to a motion to strike out the answer the court directed the question to be read to the witness; whereupon she answered that she did not know the relationship existing between the defendant and the deceased. The objection should have been sustained to the question; but the error of the court's ruling in that behalf was rendered harmless, we think, by the ultimate answer of the witness. The original answer of the witness was not responsive to the question, and consequently should have been stricken out; but all parties, including the defendant, seemed to treat the reading of the question to the witness and her answering it anew as the equivalent of an order striking out her first answer; but in any event the failure of the trial court to make a formal ruling striking out the objectionable answer was not prejudicial in the presence of abundant other undisputed evidence to the effect that the deceased had every reason to fear the defendant and actually did live in fear of him.

Upon several occasions certain witnesses for the people persisted in volunteering their conclusions and opinions concerning details of the matters and things which they were called upon to testify to. The several motions of counsel for the defendant to strike out the opinions and conclusions of the witnesses in the particulars referred to should have been granted. The opinions and conclusions expressed, however, related largely to minor and comparatively inconsequential matters, and we are satisfied that they did not operate to the prejudice of the defendant.

The trial court did not err in permitting evidence of the defendant's ill-treatment of the deceased some four or five years prior to a reconciliation which it appears had been

effected between the defendant and the deceased. The remoteness of the defendant's conduct in this behalf with reference to the reconciliation was an objection which went to the weight of the evidence rather than to its admissibility.

During the course of the trial counsel for the defendant and the district attorney frequently clashed, to the point of indulging in personalities, and apparently the trial court had much difficulty in keeping the conduct of the case within the bounds of professional decorum and dignity. Several things that the district attorney did and said were undoubtedly misconduct; but in each instance the assignment of misconduct was made, and thereupon the district attorney was reprimanded for his transgressions, and invariably the trial court corrected their evil tendency by appropriate admonitions to the jury.

The community property of the defendant and the deceased had been homesteaded prior to the institution of the divorce proceedings. The prosecution offered, and there was received in evidence over the objection of the defendant, the judgment of the superior court of Santa Clara County founded upon the petition of the defendant, adjudicating the death of the deceased, and vesting the title to the real property in the defendant. The purpose of this evidence was not declared at the time it was offered; and we are unable to conceive a theory upon which it could be rightfully held to be material and relevant to the issues of the defendant's guilt or innocence under all of the circumstances of this case. The record fails to disclose any evidence, direct or circumstantial, tending to show that the procurement of this judgment by the defendant was part of a preconceived plan to become possessed of the community property upon the death of the deceased; and standing alone the mere fact that the defendant had petitioned for the judgment in question was not a circumstance which tended in any degree to show the motive of the defendant in killing the deceased. However, the introduction of the judgment in evidence does not appear to have operated to the disadvantage of the defendant. To the contrary, it was shown by the uncontradicted testimony of a witness for the prosecution and that of the defendant as well that the procurement of the judgment was prompted by the necessity of clearing the title to the property preparatory to the procurement of a loan in the sum of one thousand dollars

to be used to pay debts of the defendant and the deceased, and in satisfying the urgent claims of mortgagees. In any event, a careful consideration of the competent evidence in the case has convinced us of the guilt of the defendant; and we are satisfied that the ruling of the court immediately under consideration neither contributed to nor controlled the verdict.

This disposes of all of the points made in support of the appeal which in our judgment are worthy of serious consideration.

The judgment and order appealed from are affirmed.

Kerrigan, J., and Richards, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 7, 1915.