[Crim. No. 2834. Second Appellate District, Division Two.—May 12, 1936.]

THE PEOPLE, Respondent, v. GRAY EVERETT McNEER, Appellant.

24

Frederic H. Vercoe, Public Defender, and William B. Neeley, Deputy Public Defender, for Appellant.

U. S. Webb, Attorney-General, and Alberta Belford, Deputy Attorney-General, for Respondent.

CRAIL, P. J.—Defendant was charged with the crime of murder. On a first trial he was convicted of second degree murder. He appealed and obtained a reversal. A second trial resulted in a conviction of murder in the first degree. The appeal is from said judgment.

Defendant and the deceased were husband and wife. About a week prior to the act charged in the information the decedent had been granted an interlocutory decree of divorce. On the night of June 27, 1934, defendant and decedent were found seated side by side in an automobile parked on the side of a road. Defendant was in the driver's seat and decedent was to his right. Life had already passed from the body of the decedent, who had three bullet holes in the *left* side of her head, one of which would have caused instant death. The powder burns indicated that the gun had been held from 6 to 12 inches from decedent's head. The testimony showed that decedent was *right handed. Her hands were folded in her lap;* her head had fallen forward on her chest. There was a bullet hole in defendant's right temple; the bullet had traveled upward. He was mumbling, ''She did it.'' A fifth bullet was found in the roof of the car. The gun used was a six-shot revolver which had been loaded with five cartridges. It had been taken from the home of a mutual friend. The sixth cartridge unexploded was found in the right-hand pocket of

defendant's coat. The gun was found on decedent's knees with the trigger away from the body.

The physical facts and circumstances in evidence permitted the jury to reconstruct the crime with considerable accuracy. The evidence showed that decedent was unfamiliar with firearms and very much afraid of them. Expert testimony indicated that it was customary for safety to load the type of gun which was used with only five cartridges. That the gun was so loaded and that the sixth cartridge was found in defendant's pocket, points strongly to the conclusion that it was defendant who took the gun from his friend's house. It would have been impossible for the decedent, a right-handed person, to have held the gun from 6 to 12 inches from her head and fired the three shots which entered her head from the left. The bullet which penetrated her brain, causing instant death, was the first shot fired for the reason that the body apparently did not convulse or lunge forward, but only slumped in the seat, leaving the hands folded in her lap. The shot which caused the injury to defendant entered from the right and slanted upward, and was fired by defendant himself. Defendant's theory at the trial was that decedent fired the first shot and that he did not know what happened thereafter. However, the position of decedent in death negatived the idea that there was a struggle for possession of the gun or that decedent ever had the gun in her hands. The placing of the gun on decedent's knees and the assertion, "She did it," indicated effort on the part of defendant to hide his guilt.

Defendant first contends "that the evidence in this case, even when viewed in the light most favorable to the prosecution, only establishes that a criminal homicide was committed and that there is no evidence to support the verdict of first degree murder". The question of the degree of crime is one exclusively for the jury, and its determination in this respect will not be disturbed when there is any substantial evidence to support it. (*People* v. *Rico,* 180 Cal. 385 [181 Pac. 663]; *People* v. *Mahatch,* 148 Cal. 200 [82 Pac. 779], and cases cited in note 15, 13 Cal. Jur. 595.) Evidence of a deliberate purpose to kill may be inferred from proof of such facts and circumstances in the case as would reasonably warrant an inference of its existence. (*People* v.

*Mahatch, supra; People* v. *Welsh,* 63 Cal. 167; also see 8 Cal. Jur. 190, sec. 265.) There is substantial evidence to support the finding of the jury in this regard.

Defendant's second contention is that the court erred in refusing to give an instruction requested by him with respect to proof of premeditation. This point was fully covered in an instruction which was given, and which correctly stated the law.

Defendant next contends that the court refused to give an instruction based on section 1105 of the Penal Code. Where the killing is denied, and no attempt is made to justify, excuse or mitigate it, an instruction substantially in the language of section 1105 of the Penal Code is inapplicable. (*People* v. *Miller,* 177 Cal. 404 [170 Pac. 817].)

The fourth contention of defendant is that the court erred in refusing to give an instruction requested by him with respect to the testimony of expert witnesses, but this point was fairly and correctly covered by an instruction which was given.

In giving instructions on circumstantial evidence the court failed to include an element requested by the defendant that the evidence must be of such a character as to exclude every reasonable hypothesis except that of guilt. (*People* v. *McClain,* 115 Cal. App. 505 [1 Pac. (2d) 1085]; opinion of Supreme Court denying hearing in *People* v. *Heuss,* 95 Cal. App. 680 [273 Pac. 583].) The error does not require a reversal of the judgment since from the evidence as a whole it cannot be said that there has been a miscarriage of justice.

Defendant's next contention is that the court erred in admitting in evidence the file in the divorce action heretofore mentioned and in permitting the district attorney to read to the jury the allegations of the complaint therein. A reading of the reporter's transcript discloses that the files in the divorce action were not actually admitted in evidence, but only one page of the complaint, which the district attorney read to the jury. This the court by its ruling admitted for all purposes. Such a ruling was held erroneous in *People* v. *Holloway,* 28 Cal. App. 214 [151 Pac. 975]. The error, however, does not call for a reversal since the prosecution proved the acts alleged in the divorce complaint by other overwhelming evidence and the defendant's denial of the charges was

weak and unconvincing. The present situation is quite similar to that of the Holloway case in which it was held that the error did not prejudice the defendant.

■ The defendant's final contention is that the verdict of murder in the second degree at the conclusion of the first trial was an acquittal of first degree murder and that his defense of once in jeopardy should have been sustained. Defendant says, "Contrary to general belief, we do not believe that there is a single case in California in which the same issue here raised has been directly passed upon by our Supreme Court or District Court of Appeal."

The question turns upon whether first degree murder and second degree murder are two separate offenses, or one offense with two degrees, the degrees being specified for the purpose of fixing the punishment. "The prohibition of the Constitution is against putting a person twice in jeopardy for the 'same offense'. Art. I, sec. 13. See, also, Pen. Code, sec. 1017, subd. 3.)" (*People* v. *Brannon,* 70 Cal. App. 225 [233 Pac. 88, 89].)

In the early case of *People* v. *Keefer,* 65 Cal. 232 [3 Pac. 818], the defendant had been convicted of murder of the second degree at a former trial and at the second trial he requested an instruction to the effect that "having been previously tried on this indictment and found guilty of murder in the second degree, he cannot now be convicted of murder in the first degree". This instruction the court refused. The defendant asked a reversal upon this ground. The court said: "At the second trial defendant was found guilty of murder of the second degree. It is obvious, therefore, that the mere refusal of an instruction that he could not be convicted of murder of the first degree did not prejudice him. Inasmuch, however, as there must be a retrial of this action, it is proper to add that the conviction of murder of the second degree would not have been a bar to a conviction of murder of the first degree. The indictment charges the crime of *murder,* and the defendant was not acquitted of murder by the first verdict. In dividing the crime of murder into two degrees the legislature recognized the fact that some murders, comprehended within the same general definition, are of a less cruel and aggravated character than others, and deserving of less punishment. It did not attempt to define

the crime of murder anew, but only to draw certain lines of distinction by reference to which the jury might determine, in a particular case, whether the crime deserved the extreme penalty of the law or a less severe punishment. (*People* v. *Haun*, 44 Cal. 96, 98; *People* v. *Doyell* [48 Cal. 85], *supra*.) After the Act of 1856, which divided the crime into murder of the first and second degrees, *murder* remained, and it still remains, the unlawful killing of a human being with malice aforethought. (Pen. Code, secs. 187, 188.) The malice may be expressed or implied; the express intent to kill or to commit one of the named felonies may be affirmatively established, or, the killing being proved, the malice may be implied, but in either case the crime is murder. The fact that a severer penalty is to be imposed in one case than the other, does not change the effect of a previous conviction, and the defendant who, on his own motion, secures a new trial, subjects himself to a retrial on the charge of murder, whether the first verdict was guilty of murder of the first or of the second degree. At the second trial he may, if the evidence justify such verdict, be found guilty of murder of the first degree.''

In the case of *People* v. *Gordon*, 99 Cal. 227 [33 Pac. 901, 902], the two offenses, an assault with intent to commit murder and an assault with a deadly weapon, were involved in a plea of former jeopardy. The court said, ''In the case of *People* v. *Keefer*, 65 Cal. 232 [3 Pac. 818], the defendant was indicted for the crime of murder, and convicted of murder of the second degree. On his motion a new trial was granted. At the second trial his counsel requested the court to instruct the jury that: 'Defendant having been previously tried on this indictment and found guilty of murder of the second degree, he cannot now be convicted of murder in the first degree.' The instruction was refused, and on appeal the refusal was held to be proper. This was based upon the fact that there is but one crime of murder, which is the unlawful killing of a human being with malice aforethought. The court said: 'The indictment charges the crime of *murder*, and the defendant was not acquitted of murder by the first verdict. In dividing the crime of murder into two degrees the legislature recognized the fact that some murders, comprehended within the same general definition, are of a less cruel and aggravated character than others, and deserving

of less punishment. It did not attempt to define the crime of murder anew, but only to draw certain lines of distinction by reference to which the jury might determine in a particular case whether the crime deserved the extreme penalty of the law or a less severe punishment.' It was accordingly held that the defendant had subjected himself to a retrial on the charge of murder, and that on such retrial he might be found guilty of murder of the first degree if the evidence would warrant such a verdict. That case is not in point here, for the reason that an assault with intent to commit murder and an assault with a deadly weapon are not the same offense, but are different offenses. (Pen. Code, secs. 217, 245.) ''

In the case of *People* v. *Grill*, 151 Cal. 592, at page 598 [91 Pac. 515, 517], the court said: ''It has been held that a conviction of murder of the second degree upon the trial of a charge of murder of the first degree is no bar to a subsequent conviction of the higher degree upon a retrial of the same case granted upon defendant's motion. (*People* v. *Keefer*, 65 Cal. 232, 235 [3 Pac. 818] ; *People* v. *Carty*, 77 Cal. 213 [19 Pac. 490] ; *People* v. *Gordon*, 99 Cal. 227, 232 [33 Pac. 901].) Upon this exact point we need express no opinion.'' To have done so would have been *obiter*. Again in *People* v. *Elmore*, 167 Cal. 205 [138 Pac. 989], in reversing a conviction for second degree murder on the ground of insufficiency of the evidence to sustain it, and where the question of former jeopardy was not involved, the court said: ''By rendering a verdict finding the defendant guilty of murder in the second degree, the jury, in effect, acquitted him of murder of the first degree.'' In the case of *People* v. *Phelan*, 123 Cal. 551, at page 565 [56 Pac. 424], in discussing alleged errors of the court in rulings on evidence and alleged errors in remarks made in overruling objections and in discussing the sufficiency of the evidence to sustain the verdict, the court made the incidental observation, ''With respect to all these matters, it may also be said that the verdict of murder in the second degree conclusively shows that the jury must have discarded the theories of the prosecution as to lying in wait, *et cetera*—for upon those theories the defendant was guilty of murder in the first degree.'' So far as we know these are the only references to the question which the Supreme Court has made, directly or remotely. In the Keefer case the question was directly involved and became the law of the case.

In all other cases the quotations above given were *obiter dicta*.

The defendant relies upon *People* v. *Gilmore*, 4 Cal. 376 [60 Am. Dec. 620], *People* v. *Smith*, 134 Cal. 453 [66 Pac. 669], *People* v. *McFarlane*, 138 Cal. 481 [71 Pac. 568, 72 Pac. 48, 61 L. R. A. 245], and *People* v. *Muhlner*, 115 Cal. 303 [47 Pac. 128]. However, these are all cases in which the defendant at the first trial was convicted of manslaughter and not of murder. These and cases of similar import have all been decided upon the theory that manslaughter is a different offense from murder and not a different degree of the same offense. The defendant also relies upon the case of *Radej* v. *State*, 152 Wis. 503 [140 N. W. 21].

At the first trial the defendant was not acquitted of murder. He was convicted of murder. There are not two offenses defined as murder, only one. The verdict of second degree was merely a finding by the jury made for the purpose of fixing the punishment. The decision of the Supreme Court in the early case of *People* v. *Keefer*, has never been overruled and is the law in California. The granting of a new trial places the parties in the same position as if no trial had been had. (Pen. Code, sec. 1180.) This is in line with sound public policy. This policy should be followed where it can be fairly done without violating the constitutional mandate with regard to former jeopardy.

Judgment affirmed.

Wood, J., and McComb, J., *pro tem.*, concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 11, 1936.