[Crim. No. 3729.  In Bank.—April 28, 1934.]

THE PEOPLE, Respondent, v. PIERRE D'A PHILIPPO, Appellant.

Pierre d'A Philippo, *in pro. per.*, for Appellant.

U. S. Webb, Attorney-General, J. Charles Jones, Deputy Attorney-General, Gerard C. Darrah, District Attorney, and Ward A. Hill, Assistant District Attorney, for Respondent.

PRESTON, J.—We hereby adopt as part of this opinion the following language from the opinion prepared by Mr. Justice Thompson, heretofore rendered herein by the honorable District Court of Appeal for the Third Appellate District:

"The defendant Pierre d'A Philippo was charged by an indictment filed in San Joaquin county July 28, 1932, with the crime of grand theft, together with two prior convictions of separate forgeries. The indictment was drawn in seventeen counts, separately charging the defendant with the appropriation of numerous shares of stock belonging to different named individuals, upon specified dates from April 7, 1930, to April 9, 1931, aggregating the value of $11,035. Prior to the trial six of these counts were dismissed. Upon arraignment the defendant pleaded not guilty to each of the separate charges of theft, and also pleaded not guilty to one of the charges of prior conviction of forgery. He admitted a prior conviction of forgery which occurred in the superior court of Santa Clara county. At the trial he was convicted of each of the remaining counts. except the first and second ones. A verdict of guilty

was rendered against him on counts Nos. 3, 4, 7, 8, 9, 10, 11, 16 and 17, which charged him with the theft of stock aggregating the value of $8,330. He was also found guilty of both charges of prior convictions of felonies, to-wit: forgeries. He was thereupon sentenced to imprisonment in the state prison at Folsom, for the term of his life, under the provisions of section 644 of the Penal Code.

"The appellant contends the court erred in receiving evidence during the trial, in his absence, and also in permitting testimony to be adduced contrary to the inhibition of section 1025 of the Penal Code, relative to the prior conviction of forgery in Santa Clara county, to which he had previously admitted his guilt. It is claimed the pronouncing of life sentence upon the defendant as an habitual criminal was unauthorized and void, since at the time of the commission of the crime of grand theft by the defendant, section 644 of the Penal Code did not include forgery among the felonies, the prior conviction of which might then be considered in determining whether the accused was an habitual criminal. It is further asserted section 644 of the Penal Code is *ex post facto* and unconstitutional for the reason that it provides for a double penalty for former crimes. Finally, it is asserted the verdict is the result of coercion and misconduct on the part of the judge, and that the district attorney was also guilty of prejudicial misconduct which precluded the defendant from receiving a fair trial.

"Section 644 of the Penal Code is not *ex post facto* or unconstitutional on account of its provision increasing the penalty upon conviction of a felony when the accused at the same time is also found guilty of prior convictions of two other felonies which are therein mentioned. (*Ex parte Gutierrez*, 45 Cal. 429; *People* v. *Vaile*, 112 Cal. App. 258 [296 Pac. 901]; *People* v. *Rosencrantz*, 95 Cal. App. 92 [272 Pac. 786]; *People* v. *James*, 71 Cal. App. 374 [235 Pac. 81]; 8 Cal. Jur. 641, sec. 614; Cooley's Const. Lim., 7th ed., p. 382.)"

However, the foregoing observation does not seem to meet the situation before us. Here the crimes for which defendant stands convicted were committed during the period from April 7, 1930, to April 9, 1931. The previous crimes for which he was convicted were forgery. Forgery did not become an ingredient of the provisions relating to

habitual criminals until August 19, 1931 (sec. 644, Pen. Code; Stats. 1931, p. 1052); therefore, had defendant been convicted subsequent to April 9 and prior to August 19, 1931, he could not have been sentenced as an habitual criminal. Hence, to so sentence him for said crimes subsequent to August 19, 1931, was to palpably increase his punishment for the offenses after their commission. To so interpret the amendment to the statute is clearly to violate article I, section 9, clause 3, of the Constitution of the United States. 'And this clause has been interpreted as meaning that no person is to be subjected by statute either to a penalty for an act which at the time of its commission was not the object of prosecution, or to a penalty higher than was attached to such act at the time of its commission.'' (Wharton's Criminal Law, 12th ed., vol. 1, sec. 41, p. 58. See, also, *Fletcher* v. *Peck*, 6 Cranch, 87 [3 L. Ed. 162]; Cooley's Const. Lim., 8th ed., pp. 541–545, and cases cited. Also, *In re Lee,* 177 Cal. 690, 695 [171 Pac. 958].

In *State of Iowa* v. *Jones,* 128 Fed. 626, 628, it is said: ''And what is an *ex post facto* law? In *Fletcher* v. *Peck,* 6 Cranch, 87 [3 L. Ed. 162], Chief Justice Marshall said: 'An *ex post facto* law is one which renders an act punishable in a manner in which it was not punishable when it was committed.' A better, or more accurate definition has not been given. From this definition it is seen that the punishment provided for when the crime was committed is the punishment that must be imposed. If no punishment was then provided for, none can be imposed by subsequent legislation. If punishment was then provided for, subsequent legislation cannot be enacted, increasing the punishment, and such legislation can only refer to subsequent crimes. The punishment can be lessened, but never increased, as against anyone, for a crime already committed. No more beneficent provision is found in the Constitution for the protection of the individual, and it must be and will be enforced on behalf of the bad citizen or criminal as well as for the good citizen.''

Quoting again from said opinion of the honorable District Court of Appeal:

''The defendant asserts that the prior conviction of a felony in the United States Court for China, at Shanghai, is void for the reason that that court was without juris-

diction. A certified copy of that judgment was received in evidence over the objection of the defendant, showing that in 1914 he was convicted of forgery in that court under the name of Peter A. Grimes. The only objection which was offered to this record was that Peter A. Grimes was not shown to be the same person as the defendant, and upon the further ground that there 'has been no foundation laid'. The identity of the defendant as the same Peter A. Grimes, who was convicted of forgery in that court at Shanghai, was satisfactorily established. The defendant failed to specify any other particular reason why the foundation for the introduction of the certified judgment was not sufficiently laid. The court therefore properly admitted the document in evidence as proof of the former conviction of the defendant. ▮ The defendant failed to object to the introduction of the record on the ground of a lack of jurisdiction. We are directed to no evidence tending to show a lack of jurisdiction on the part of the United States Court for China, either of the person of the defendant or of the crime of forgery, with which he was charged. In the absence of proof to the contrary, the jurisdiction of a court in a sister state or in a foreign country, from which a duly authenticated judgment which is regular upon its face is presented in evidence, will be presumed. (*Collins* v. *Maude*, 144 Cal. 589 [77 Pac. 945]; *McHatton* v. *Rhodes*, 143 Cal. 275 [76 Pac. 1036, 101 Am. St. Rep. 125].) It is said in 34 C. J., page 1140, section 1615 (b):

" 'In an action on a judgment recovered in another state, the record of which is duly authenticated and produced in evidence, it will be presumed that the court had jurisdiction of the subject-matter and the parties, in the absence of proof to the contrary.'

"Section 1963, subdivision 16, of the Code of Civil Procedure provides that in the absence of evidence to the contrary, the presumption is satisfactory proof:

" 'That a court or judge, acting as such, whether in this state or any other state *or country,* was acting in the lawful exercise of his jurisdiction.'

"Since there is no evidence to the contrary we must assume that the United States Court for China had jurisdiction to try criminal cases wherein an accused was

properly charged with forgery. In the absence of proof to the contrary, we must assume that the law with respect to the prosecution of forgery in the United States Court for China is the same as it is in California. In the case of *Wickersham* v. *Johnston,* 104 Cal. 407 [38 Pac. 89, 43 Am. St. Rep. 118], it is said in that regard:

" 'There was no evidence at all tending to show what the law was in the foreign country touching any of the questions which are raised here; and it must, therefore, be assumed that the law with respect to those matters was the same there as in California.'

"A United States Court for China was created by an act of Congress June 30, 1906. (22 U. S. C. A., p. 93, sec. 191, c. 3934, 34 Stats. 814; U. S. Comp. Stats. Supp. 1907, p. 797.) That court was given jurisdiction over civil and criminal proceedings involving citizens of the United States in China. In the absence of statutory provisions with relation thereto, the procedure of the common law is made applicable to criminal trials in China. (*Biddle* v. *United States,* 156 Fed. 759.) Forgery was a crime, punishable by law, under the common law. (2 Bishop's New Crim. Law, p. 300, sec. 523.) There can be no doubt the United States Court for China, which was located at Shanghai, had jurisdiction over the person and of the criminal charge of forgery, for which the defendant was there tried and convicted.

"It is claimed prejudicial error occurred by permitting evidence to be adduced at 'the trial, contrary to the inhibition of section 1025 of the Penal Code, regarding the defendant's prior conviction of forgery in Santa Clara county in spite of the fact that he had pleaded guilty to that particular charge. There is no merit in this contention. While the defendant admitted his guilt of the former conviction of forgery in Santa Clara county under the name of James H. Rogers, he pleaded not guilty to the charge of former conviction at Shanghai, China, under the name of Peter A. Grimes. He also denied that he had ever gone by the name of Grimes. It therefore became necessary in proof of the Shanghai conviction to show that the Peter A. Grimes who was convicted in China in 1914 was this defendant. He was fully identified by an expert witness as the same individual, by comparison of a photograph and

reproductions of his fingerprints which were used in connection with his conviction at Shanghai, with his physical appearance at the trial of this case, and photographs of his fingerprints which were used in connection with the Santa Clara trial.

■ "It is not error to admit evidence incidentally connected with a prior conviction of the defendant, to which he has pleaded guilty, provided such evidence is competent proof of any material fact necessary to establish his guilt of the principal offense or any other alleged prior conviction included in the charge for which he is being tried, of which he has not admitted his guilt. (*People* v. *McFarlan*, 126 Cal. App. 777 [14 Pac. (2d) 1066]; *People* v. *Booth*, 72 Cal. App. 160 [236 Pac. 987]; *People* v. *Forrester*, 116 Cal. App. 240 [2 Pac. (2d) 558].) ■ Moreover, the defendant waived any objection to a reference to the prior conviction to which he had pleaded guilty, by subsequently becoming a witness in his own behalf and voluntarily referring to that case in an effort to explain the facts and excuse the crime. (*People* v. *Fontes*, 110 Cal. App. 141 [293 Pac. 835].) Reference to the defendant's former conviction in Santa Clara County became necessary on account of his denial of his identity as Peter A. Grimes, as a matter of impeachment, which was competent. To protect the defendant against an improper consideration of the evidence of the former conviction, the court charged the jury as follows:

" 'The defendant, Pierre d'A Philippo, has admitted that he had been previously convicted of felony. You must not consider this fact for the purpose of raising a presumption or inference of his guilt of the offenses of which he now stands charged. Evidence of former conviction of felony can be considered by you only for the purpose of impeachment of the defendant as a witness.'

■ "The record does not indicate that any evidence was adduced at the trial in the absence of the defendant. It is true that the court adjourned the trial on Monday afternoon, December 12, 1932, on account of the illness of the defendant. After the defendant left the courtroom a discussion arose between respective counsel regarding the urgency of establishing proof of the former conviction which occurred in China, by a foreign witness who was then

present, but who was required to leave the city that day. To accommodate the witness, the defendant's attorney agreed to stipulate to the authenticity of the record when court again convened. Thereupon the jury was dismissed until the following day. When court again convened no objection ·was made to the authenticity of the record. A statement in open court, in the presence of the defendant, was then made regarding the substance of the former stipu· lation, which was conceded by the attorney for the defend: ant. The district attorney then proceeded to read the record in evidence, subject to the objection only that, 'It don't tend to prove or disprove any issue in this case, and that the statement is incompetent, irrelevant and immaterial.' The former agreement, which was made in the absence of the defendant, was harmless. The same stipulation was subsequently made in open court in the presence of the defendant, by affirming the district attorney's statement that it had been previously agreed upon. Error may therefore not be predicated on that circumstance.

■ ''There is nothing in the record to indicate that the judge of the court or the district attorney was guilty of any prejudicial misconduct in the trial of the case. The defendant appears to have had a fair and impartial trial. The verdict and judgment are adequately supported by the evidence.

■ ''Nor was there any irregularity or coercion in procuring or returning the verdict. The only thing to which the defendant objects is that the jury first returned into open court and presented a proposed verdict in which it appeared they had found the defendant guilty of many counts contained in the indictment, but in which they had failed to agree upon several other counts. Before the verdict was recorded by the clerk, the judge observed this omission,· and called the attention of the jury to that fact, asking them generally if they thought further consultation might aid them in agreeing to the remaining counts. Several jurors said they believed they might so agree. Nothing was said by the court intimating whether the jury should convict or acquit the defendant on those counts. The jury did retire and again deliberated on their verdict. They subsequently returned into court and formally rendered their verdict, in which they had agreed to the de-

fendant's guilt with respect to all of the counts except two, which still remained without agreement thereto. The verdict was then accepted, read to the jury and confirmed by the members thereof, and formally recorded by the clerk. There was no error in this procedure."

It appearing, as above stated, that the trial court was without jurisdiction to adjudge defendant an habitual criminal, such judgment is hereby reversed with directions to the court below to resentence defendant as required by law.

Langdon, J., Curtis, J., Shenk, J., Waste, C. J., and Seawell, J., concurred.