[Sac. No. 6928. In Bank. July 17, 1958.]

ANTHONY GOMEZ et al., Petitioners, v. THE SUPERIOR COURT OF MENDOCINO COUNTY et al., Respondents.

Kasch & Cook and Leo M. Cook for Petitioners.

Edmund G. Brown, Attorney General, Doris H. Maier and J. M. Sanderson, Deputy Attorneys General, for Respondents.

CARTER, J.—Petitioners, Anthony Gomez and Ray Cardinal, seek writs of prohibition and mandate against the superior Court of the County of Mendocino. Petitioners seek the

writ of prohibition to restrain the superior court from proceeding with the trial of the grand theft charge and the writ of mandate to compel the superior court to transfer the cause to the appropriate justice court for the disposition of the charge of petty theft.

On March 19, 1957, an information was filed against petitioners charging them with a felony, the violation of section 484 of the Penal Code.* Petitioners were accused of the theft of a P & H Loading Shovel of the value of $3,000, the personal property of one Casteel, to which charge they pleaded not guilty. The cause was tried to a jury which, after trial and argument, had submitted to it three forms of verdict: (1) Guilty of grand theft; (2) guilty of petty theft; and (3) not guilty. The verdict of the jury was that petitioners were guilty of petty theft. The court pronounced judgment and sentenced each of them to pay a $500 fine and serve a six months' term in the county jail. Petitioners appealed, and the District Court of Appeal reversed the judgment because of prejudicial misconduct on the part of the district attorney (*People* v. *Cardinal,* 154 Cal.App.2d 835 [316 P.2d 1001], October 31, 1957).

From the opinion of the District Court of Appeal (154 Cal. App.2d 835), it appears that petitioners admitted that they dismantled and sold as scrap, a loading shovel which they said they had purchased from one Berry who purported to be the owner thereof. A receipt bearing the signature "W. H.

---

*"Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property, or who causes or procures others to report falsely of his wealth or mercantile character and by thus imposing upon any person, obtains credit and thereby fraudulently gets or obtains possession of money, or property or obtains the labor or service of another, is guilty of theft. In determining the value of the property obtained, for the purposes of this section, the reasonable and fair market value shall be the test, and in determining the value of services received the contract price shall be the test. If there be no contract price, the reasonable and going wage for the service rendered shall govern. For the purposes of this section, any false and fraudulent representation or pretense made shall be treated as continuing, so as to cover any money, property or service received as a result thereof, and the complaint, information or indictment may charge that the crime was committed on any date during the particular period in question. The hiring of any additional employee or employees without advising each of them of every labor claim due and unpaid and every judgment that the employer has been unable to meet shall be prima facie evidence of intent to defraud." (Pen. Code, § 484.)

Berry'' was introduced in evidence but Berry was not produced as a witness.

Petitioners now allege that they have been ordered to proceed to trial on a charge of grand theft; that they have moved the respondent to dismiss the grand theft charge against them on the ground that they have been once in jeopardy and have been acquitted of the grand theft charge; that respondent has no jurisdiction to try them on the sole remaining charge of petty theft and that the matter should be transferred to the Justice Court for the Little Lake Judicial District, Mendocino County, which is the appropriate court for the retrial of the petty theft charge.

Section 687 of the Penal Code provides that ''No person can be subjected to a second prosecution for a public offense for which he has once been prosecuted and convicted or acquitted.'' Section 1023 of the Penal Code provides: ''When the defendant is convicted or acquitted or has been once placed in jeopardy upon an accusatory pleading, the conviction, acquittal, or jeopardy is a bar to another prosecution for the offense charged in such accusatory pleading, or for an attempt to commit the same, or for an offense necessarily included therein, of which he might have been convicted under that accusatory pleading.'' Article I, section 13, of the California Constitution provides, in part, that ''No person shall be twice put in jeopardy for the same offense. . . .''

In California a distinction has been drawn by the courts to the effect that where one is convicted of a lesser offense necessarily included in the charge of a greater offense, he may not be tried again on a charge that he has committed the greater offense. On the other hand, where a crime divided into degrees is concerned, a conviction of a lower degree of the crime has been held not to operate as an acquittal of the higher degree. In other words, it has been held that where one is found guilty of a lesser and necessarily included offense he has been placed in jeopardy and cannot again be tried for the greater offense with which he was originally charged; but where one is found guilty of second degree burglary, for example, the conviction is not considered an acquittal of a charge of first degree burglary or that the defendant has been once in jeopardy. The reasoning appears to be that in the crimes which are divided into degrees but one crime or offense has been charged and that a reversal by an appellate court, or the granting of a new trial operates to set aside the whole verdict leaving the entire matter at

644

large. Petitioners here rely on the cases holding that the conviction of a lesser offense operates as an acquittal of the greater charged offense (*People* v. *Gilmore*, 4 Cal. 376 [60 Am.Dec. 620]; *People* v. *Gordon*, 99 Cal. 227 [33 P. 901]; *In re Hess*, 45 Cal.2d 171 [288 P.2d 5]), and the People rely on the cases where "degree" crimes were involved (*People* v. *Keefer*, 65 Cal. 232 [3 P. 818]; *People* v. *McNeer*, 14 Cal.App. 2d 22 [57 P.2d 1018]; *In re Moore*, 29 Cal.App.2d 56 [84 P.2d 57]).*

In the recent case of *Green* v. *United States*, 355 U.S. 184 [78 S.Ct. 221, 2 L.Ed.2d 199, 61 A.L.R.2d 1119], where a prosecution for first degree murder was involved, a divided court held that where a jury had found the defendant guilty of second degree murder, and on appeal the conviction was reversed, the defendant could not be again tried for first degree murder because to do so would place him twice in jeopardy for the same offense in violation of the constitutional guarantee contained in the Fifth Amendment. The People contend that the double jeopardy provisions of the federal Constitution have never been applied to the states and that the rule of the Green case is not determinative of the case at bar.

There appears to be no sound reason for the distinction drawn by the California cases, and our constitutional provision and statutes certainly do not require one to be drawn. ■ As Mr. Justice Black pointed out in the Green case, "The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." (78 S.Ct. 221, 223.) In California, burglary is a crime divided into two degrees. It is defined as follows: "Every person who enters any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse or other building, tent, vessel, railroad car, trailer coach as defined in the Vehicle Code . . . with intent to commit grand or petit larceny or any felony is guilty of burglary." (Pen. Code, § 459.) Section 460 provides: "1. Every burglary of an inhabited dwelling-house or building committed in the night-time, and every

*Plea of double jeopardy held waived in burglary case.

burglary, whether in the daytime or night-time, committed by a person armed with a deadly weapon, or who while in the commission of such burglary arms himself with a deadly weapon, or who while in the commission of such burglary assaults any person, is burglary of the first degree.

"2. All other kinds of burglary are of the second degree."

If a person is accused of first degree burglary, and under the evidence a jury returns a verdict of second degree burglary, it has impliedly found that the accused did not enter an inhabited dwelling-house in the nighttime, or was not armed with a deadly weapon during the commission of the crime, or that he did not assault any person during the commission of the crime. Insofar as the elements of the crime of burglary are concerned, they remain the same except for the difference between the two degrees, and since the jury had before it all of the evidence pertaining to the crime allegedly committed by the accused, the distinction in the two lines of cases appears unsound. The elements necessary for first degree murder differ from those of second degree murder in much the same way. A jury impliedly decides that the necessary element of the greater crime is lacking under the evidence and returns a verdict finding the defendant guilty of the lesser degree.

In the case under consideration, petitioners were charged with grand theft of an article of the alleged value of $3,000. The jury found them guilty of petty theft—or, in other words, the jury which heard the evidence found them guilty, but impliedly determined that the value of the article stolen did not exceed $200.

██ The distinctions between grand and petty theft according to the Penal Code are in the type of article stolen, whether the article was taken from the person of another and in the value thereof. (Pen. Code, §§ 484, 487, 487a, 488.) The elements of the crime remain the same with the exceptions noted. In *People* v. *Ny Sam Chung* (1892), 94 Cal. 304, 307 [29 P. 642, 28 Am.St.Rep. 29], a prosecution for grand larceny was held barred after the court had dismissed a charge of petty larceny against the defendants. The court said: "It follows that if defendants were placed in jeopardy by reason of the proceedings in the police court, their trial in the superior court was a second jeopardy, and they are entitled to their discharge." This case was, of course, decided prior to the 1927 amalgamation of the crimes of larceny, embezzlement, false pretenses and kindred offenses under the cognomen of

theft. However, no elements of the former crimes have been changed. In *People* v. *Myers*, 206 Cal. 480, 483 [275 P. 219], the court was discussing the change made by the 1927 amendment and held: "No elements of the former crimes have been changed by addition or subtraction. This is particularly true of the crime of larceny. All former elements of this offense are perpetuated and contained in section 484 as amended." In the Ny Sam Chung case the question presented was whether the defendants had stolen a gold bracelet of the value of $27 from Jeong Koong. After the evidence was all in, the prosecuting attorney suggested that the property had been taken from the person of Koong and that the offense was grand larceny, rather than petty larceny. The court ordered the action dismissed and the defendants were thereafter placed on trial in the superior court on a charge of grand larceny "upon an information alleging the same facts set out in the complaint in the police court, and the further fact that the property was taken from the person of said Jeong Koong." This court specifically held that defendants had been once in jeopardy and the judgment and order was reversed "with directions to discharge the defendants and dismiss the proceedings." Inasmuch as the elements of the crime remain the same, there appears to be no reason to distinguish the Ny Sam Chung case on the ground that it was decided prior to the 1927 legislation heretofore considered. In *People* v. *Stanhope*, 37 Cal.App.2d 631 [99 P.2d 1075], defendant was charged with grand theft, "to which accusation he entered a plea of not guilty, was tried before a jury, and convicted of the lesser offense of petty theft. His motion for a new trial having been denied and probation granted, the defendant appeals from the order denying him a new trial." In affirming the judgment, the court said: "In view of the provisions of section 487 and 488 of the Penal Code, it is at once apparent that the jury resolved the doubt concerning the amount of money involved, in appellant's favor and found him guilty of petty theft. If this was error, it was certainly error of which appellant cannot complain." (P. 636.) In other words, the court considered the crime of petty theft necessarily included in a charge of grand theft. In *People* v. *Simpson*, 26 Cal.App.2d 223, 229 [79 P.2d 119], where the jury improperly fixed the defendants' guilt as grand theft, the appellate court modified the judgment so as to find the degree of the crime to be petty theft. In other words, the appellate decision was a recognition of the fact that petty theft is necessarily included within a charge

of grand theft. In *People* v. *Kelley,* 208 Cal. 387, 391 [281 P. 609], where the defendant was found guilty of first degree murder by a jury, this court modified the judgment so as to find the defendant guilty of manslaughter. It was held that "Section 1181 of the Penal Code,* as amended in 1927 (Stats. 1927, p. 1037), which must now be considered for the first time by this court, provides that if the evidence (in criminal causes) shows the defendant to be not guilty of the degree of the crime of which he was convicted, *but guilty of a lesser degree thereof or of a lesser crime included therein,* the trial court may modify the judgment accordingly without granting or ordering a new trial, and this power shall extend to any court to which the cause may be appealed." (Emphasis added.) (See also *People* v. *Castro,* 37 Cal.App.2d 311, 315 [99 P.2d 374]; *People* v. *Cowan,* 38 Cal.App.2d 231, 248 [101 P.2d 125], reduction of conviction of first degree murder to that of second degree; *People* v. *LaFleur,* 42 Cal.App.2d 50, 57 [108 P.2d 99], reduction of conviction of first degree murder to that of second degree; *People* v. *Lynch,* 60 Cal.App.2d 133, 145 [140 P.2d 418], conviction of first degree burglary reversed because "as a matter of law he [defendant] was entitled to a finding pursuant to section 1097 of the Penal Code that the offense was of the second degree"; *People* v. *Slater,* 60 Cal.App.2d 358, 371 [140 P.2d 846], conviction of second degree murder reduced to manslaughter; *People* v. *Daniel,* 65 Cal.App.2d 622, 636 [151 P.2d 275], conviction of first degree murder reduced to second degree murder.)

The above cited cases make no distinction between lesser included, although differently defined, crimes and crimes of a lesser degree when the question involved is whether the appellate court should modify the judgment without ordering a new trial. It appears to us that no distinction should be drawn insofar as the question of double jeopardy is concerned.

In *People* v. *Greer,* 30 Cal.2d 589, 596, 597 [184 P.2d 512], defendant was charged with both statutory rape and lewd and lascivious conduct. In reversing, we said: "The test in this state of a necessarily included offense is simply that

---

*"When the verdict *or finding* is contrary to law or evidence, but if the evidence shows the defendant to be not guilty of the degree of the crime of which he was convicted, but guilty of a lesser degree thereof, or of a lesser crime included therein, the court may modify the *verdict, finding or* judgment accordingly without granting or ordering a new trial, and this power shall extend to any court to which the cause may be appealed. . . ." (Pen. Code, § 1181, subd. 6; italicized words added by 1951 amdt.)

where an offense cannot be committed without necessarily committing another offense, the latter is a necessarily included offense. (*People* v. *Krupa*, 64 Cal.App.2d 592, 598 [149 P.2d 416].) Thus, a prosecution for battery cannot be followed by a prosecution for assault based upon the same acts. An assault is a necessary element of battery, and it is impossible to commit battery without assaulting the victim. The assault, to adopt the statutory language, is 'necessarily included therein.' (*People* v. *McDaniels*, 137 Cal. 192, 194 [69 P. 1006, 92 Am.St.Rep. 81, 59 L.R.A. 578].)

"Although section 1023 refers to a situation where the prosecution for the greater offense is first in time, there is no such limitation in the cases. If the defendant is tried first for assault and later for battery, the prosecution for the included offense bars the subsequent prosecution for the greater offense. (*People* v. *McDaniels*, *supra*, at p. 195; *People* v. *Defoor*, 100 Cal. 150, 154 [34 P. 642]; *People* v. *Ny Sam Chung*, 94 Cal. 304, 306 [29 P. 642, 28 Am.St.Rep. 29]; see Official Draft on Double Jeopardy, *supra*, § 17; 1 Bishop's Criminal Law (9th ed.) § 1057; 2 Freeman on Judgments (5th ed.) § 559.) 'A conviction of the lesser is held to be a bar to [the] prosecution for the greater on the theory that to convict of the greater would be to convict twice of the lesser.' (*People* v. *Krupa*, *supra*, at p. 598.) If this were not the rule, section 1023 could be vitiated by the simple device of beginning with a prosecution of the lesser offense and proceeding up the scale." (For an excellent discussion on necessarily included offenses, see *People* v. *Marshall*, 48 Cal.2d 394 [309 P.2d 456].)

■ Viewing the matter realistically it appears that defendants here would be tried again on the same set of facts as prevailed when they were found guilty of petty theft. The American Law Institute defines "same offense" as follows: "Prosecutions are for the same offense when they are for violations of the same provisions of the criminal law *and when the facts on which they are based are the same.*" (Emphasis added; Official Draft on Double Jeopardy, Administration of the Criminal Law, American Law Institute, § 5.) (See also *People* v. *Defoor*, 100 Cal. 150 [34 P. 642]; *People* v. *McDaniels*, 137 Cal. 192 [69 P. 1006, 92 Am.St.Rep. 81, 59 L.R.A. 578].)

While it is true as argued by the People that the double jeopardy provisions of the Fifth Amendment to the Constitution of the United States have not definitely been held ap-

plicable to the states as encompassed in the due process clause of the Fourteenth Amendment, the language in the Green case (78 S.Ct. 221, *supra*) is certainly persuasive. (And see *Hoag* v. *State*, 356 U.S. 464 [78 S.Ct. 829, 2 L.Ed.2d 913], dissenting opinion of Justices Douglas and Black.) The guarantee against double jeopardy in the California Constitution is almost precisely the same as that found in the federal Constitution. Article I, section 13, of our Constitution is entitled "CRIMINAL PROSECUTIONS—RIGHTS OF ACCUSED. DUE PROCESS OF LAW. JEOPARDY. COMMENT ON FAILURE OF DEFENDANT TO TESTIFY. DEPOSITIONS." It would appear from this that the framers of our Constitution considered the prohibition against twice in jeopardy as part of the concept of due process of law. In the Green case (p. 229) the court said: "We believe that if either of the rationales offered to support the Trono result [*Trono* v. *United States*, 199 U.S. 521 (26 S.Ct. 121, 50 L.Ed. 292)] were adopted here it would unduly impair the constitutional prohibition against double jeopardy. The right not to be placed in jeopardy more than once for the same offense is a vital safeguard in our society, one that was dearly won and one that should continue to be highly valued. If such great constitutional protections are given a narrow, grudging application they are deprived of much of their significance. We do not feel that Trono or any other decision by this Court compels us to forego the conclusion that a second trial of Green for first degree murder was contrary to both the letter and spirit of the Fifth Amendment." It appears to us that if the spurious distinction made by the California cases is perpetuated in the case at bar we would be giving our constitutional prohibition against twice in jeopardy a "narrow, grudging application" unsupported by either logic or reason.

 The People argue that defendants have waived their rights to urge the question of double jeopardy. This contention appears to be based first on the ground that the question of double jeopardy was not raised by plea as required by sections 1016 and 1017 of the Penal Code. A copy of the minute ·order, dated March 21, 1958, in the case of *People of the State of California*, plaintiff, v. *Anthony Gomez and Ray Cardinal*, defendants, Number 3124-C, is as follows: "This matter came on at this time to be set, both defendants present; Frank Petersen, Deputy District Attorney appearing for the People and Leo Cook appearing as counsel for defendants. Defendants entered pleas of Not Guilty by reasons once in jeopardy

and of prior acquittal. Request by counsel for release upon own recognizance or that bail be reduced denied. Order that bail remain as is. It is ordered that the matter be and is set for trial May 5, 6, and 7, 1958 and on the calendar April 25, 1958 to draw jury.'' While the minute order does not show that defendants named the court, the place and the time, of the former trial (Pen. Code, § 1017, subds. 3, 4), it appears that the statute was substantially followed since it is provided: ''Every plea must be made in open court and may be oral or in writing, and must be entered upon the minutes of the court and must be taken down in shorthand by the official reporter if there is one present. The plea, whether oral or in writing, must be in substantially the following form. . . .'' (Pen. Code, § 1017.) *In re Burns,* 78 Cal.App.2d 294 [177 P.2d 649], relied upon by the People is not in point since there the defendants sought to raise the plea of once in jeopardy by a petition for a writ of habeas corpus *after* a third trial in which all five of them were found guilty. (The first two trials had resulted in disagreements of the jury.) *In re Harron,* 191 Cal. 457, 469 [217 P. 728], relied upon by the People, was also a proceeding in habeas corpus brought after the defendant was convicted upon a second complaint for battery and after the judgment had become final. The court held that ''after final judgment, *habeas corpus* cannot be used as a writ of error, and petitioner has not met the burden of showing he exhausted below the defense upon which he must rely, [and] he is not entitled to relief.''

The People next argue that petitioners have waived their plea of double jeopardy in that they appealed their conviction, relying upon section 1262 of the Penal Code which provides: ''If a judgment against the defendant is reversed, such reversal shall be deemed an order for a new trial, unless the appellate court shall otherwise direct. If the appellate court directs a final disposition of the action in the defendant's favor, the court must, if he is in custody, direct him to be discharged therefrom. . . .'' The People also rely on section 1180 of the Penal Code which provides: ''The granting of a new trial places the parties in the same position as if no trial had been had. All the testimony must be produced anew, and the former verdict or finding cannot be used or referred to, either in evidence or in argument, or be pleaded in bar of any conviction which might have been had under the accusatory pleading.'' There is obviously no merit to this contention. In that line of cases holding that double jeopardy attaches when

a conviction has been had on a necessarily included offense (*In re Hess,* 45 Cal.2d 171 [288 P.2d 5] ; *People* v. *Greer,* 30 Cal.2d 589 [184 P.2d 512] ; *People* v. *McFarlane,* 138 Cal. 481 [71 P. 568, 72 P. 48, 61 L.R.A. 245] ; *People* v. *Smith,* 134 Cal. 453 [66 P. 669] ; *People* v. *Gordon,* 99 Cal. 227 [33 P. 901] ; *People* v. *Krupa,* 64 Cal.App.2d 592 [149 P.2d 416]) the Penal Code sections relied upon by the People have not been considered as a bar to a plea of double jeopardy.

Insofar as the People's contention reaches the question of waiver, because of defendants' successful appeal from the petty theft conviction, the matter was admirably discussed in the Green case where it was held: "Using reasoning which purports to be analogous to that expressed by Mr. Justice Holmes in Kepner [*Kepner* v. *United States,* 195 U.S. 100 (24 S.Ct. 797, 49 L.Ed. 114)], the Government alternatively argues that Green, by appealing, prolonged his original jeopardy so that when his conviction for second degree murder was reversed and the case remanded he could be tried again for first degree murder without placing him in new jeopardy. We believe this argument is also untenable. Whatever may be said for the notion of continuing jeopardy with regard to an offense when a defendant has been convicted of that offense and has secured reversal of the conviction by appeal, here Green was not convicted of first degree murder and that offense was not involved in his appeal. If Green had only appealed his conviction of arson and that conviction had been set aside surely no one would claim that he could have been tried a second time for first degree murder by reasoning that his initial jeopardy on that charge continued until every offense alleged in the indictment had been finally adjudicated.

"Reduced to plain terms, the Government contends that in order to secure the reversal of an erroneous conviction of one offense, a defendant must surrender his valid defense of former jeopardy not only on that offense but also on a different offense for which he was not convicted and which was not involved in his appeal. Or stated in the terms of this case, he must be willing to barter his constitutional protection against a second prosecution for an offense punishable by death as the price of a successful appeal from an erroneous conviction of another offense for which he has been sentenced to five to twenty years' imprisonment. As the Court of Appeals said in its first opinion in this case, a defendant faced with such a 'choice' takes a 'desperate chance' in securing the reversal of the erroneous conviction. The law should not, and in our

judgment does not, place the defendant in such an incredible dilemma. Conditioning an appeal of one offense on a coerced surrender of a valid plea of former jeopardy on another offense exacts a forfeiture in plain conflict with the constitutional bar against double jeopardy." (Pp. 226-227.)

Under the theory presented in the case at bar by the People, these defendants would be forced to choose between appealing an erroneous conviction of petty theft and their constitutional guarantee that they shall not twice be placed in jeopardy for a charge of grand theft. *People* v. *Green*, 47 Cal.2d 209, 235 [302 P.2d 307], relied upon by the People is not pertinent. In the Green case defendant appealed from a conviction of first degree murder with the penalty fixed at death. We affirmed the judgment of first degree murder and reversed only so far as the penalty was concerned. Petitioners here would have no claim that they were twice in jeopardy by being subjected to a second trial, after reversal by an appellate court, on the *petty theft* charge only. Here, as in the case of *Green* v. *United States*, 355 U.S. 184 [78 S.Ct. 221, 2 L.Ed.2d 199, 61 A.L.R.2d 1119], defendants were found guilty of the lesser crime and their appeal was from that judgment. ■ Double jeopardy attaches when they are threatened with a second trial on the greater charge of grand theft of which they were impliedly acquitted at the first trial where they were found guilty only of petty theft. *People* v. *d'A Philippo*, 140 Cal.App. 236 [35 P.2d 134], also relied upon by the People is not in point. In the d'A Philippo case, the defendant was pronounced an habitual criminal. This court set aside that particular adjudication on the ground that the trial court had no jurisdiction to sentence him as an habitual criminal and reversed the judgment with "'. . . '. . . directions to the court below to resentence defendant, as required by law. (220 Cal. 620 [32 P.2d 962].)'" The appellate court held that the resentencing of the defendant did not constitute double jeopardy.

■ The People contend, finally, that neither prohibition nor mandamus are proper remedies at this time. It is again argued that petitioners did not raise the plea of double jeopardy as provided for in sections 1016 and 1017 of the Penal Code. As previously shown by the record, the plea was raised in accord with the statutes and the remedies sought are proper. In *Jackson* v. *Superior Court*, 10 Cal.2d 350, 353 [74 P.2d 243, 113 A.L.R. 1422], the same point was made by the respondents, and quoting from the opinion of the

District Court of Appeal in the same case, it was said: " 'Respondents urge that the writ [prohibition] should not be issued because petitioners possess a plain, speedy and adequate remedy at law whereby they may preserve the rights which they hope to protect in this proceeding. They maintain that the plea of former jeopardy is one which the petitioners may or may not enter, their action depending on themselves and their counsel; that if the trial court was in error in refusing their request to enter these pleas, and was in error in concluding that jeopardy had not attached, those questions might be raised on appeal if they should be convicted at their second trial, and would serve as a sure ground for reversal of the judgments which might be pronounced against them, which reversals would result in their discharge after the appeal had been decided. That the right to raise this question on appeal is plain cannot be doubted. That it is either speedy or adequate is open to serious question. . . . In view of the considerable discretion vested in us in issuing these writs we are constrained to hold that while the remedy at law is plain it is neither speedy nor adequate under the facts before us and especially in view of the fact that in its final analysis the question before us is one of the jurisdiction of respondents to again place petitioners on trial for the offenses charged in the indictment found against them. (*Menjou* v. *Superior Court*, 128 Cal.App. 117 [16 P.2d 1007] ; *Huntington* v. *Superior Court*, 5 Cal.App. 288 [90 P. 141] ; *Oliver* v. *Superior Court*, 92 Cal.App. 94 [267 P. 764].)' "

It is our opinion that there is no sound basis for the distinction heretofore drawn by the courts of this state insofar as lesser included offenses and degree crimes are concerned and that petitioners here should be considered as having been once in jeopardy. Inasmuch as the facts here presented bring petitioners squarely within the constitutional prohibition against placing a defendant twice in jeopardy, it is unnecessary for us to determine whether the prohibition against double jeopardy is part of the due process clause.

The writs should issue as prayed for, and it is so ordered.

Gibson, C. J., Traynor, J., and Schauer, J., concurred.

Spence, J., concurred in the judgment.

McCOMB, J.—I dissent, for the reasons stated by Mr. Presiding Justice Van Dyke in the opinion prepared by him for the District Court of Appeal in *Gomez* v. *Superior Court of Mendocino County*, (Cal.App.) 322 P.2d 292.