Filed 2/1/22  P. v. Torres CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JAIME TORRES,<br><br>    Defendant and Appellant. | C093439<br><br>(Super. Ct. No. 08F05656)<br><br>ORDER MODIFYING OPINION [NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on January 31, 2022, be modified as follows:

On page 10, delete the third full paragraph beginning, "The court cited *Rodriguez.*"

There is no change in the judgment.

BY THE COURT:


/s/
Raye, P. J.


/s/
Hull, J.


/s/
Robie, J.

1

Filed 1/31/22 P. v. Torres CA3 (unmodified opinion)

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C093439 |
| Plaintiff and Respondent, | (Super. Ct. No. 08F05656) |
| v. | |
| JAIME TORRES, | |
| Defendant and Appellant. | |

In 2011, a jury found defendant Jaime Torres guilty of the first degree murder of Jose Guerrero. After appeal and remand, defendant's conviction was reduced to second degree murder. Following the passage of Senate Bill No. 1437 (2017-2018 Reg. Sess.), defendant filed a petition for resentencing pursuant to Penal Code[1] section 1170.95. After a hearing, the trial court denied the petition and defendant appealed. We cannot determine from the hearing and the trial court's order whether the court applied the proper standard of review. Accordingly, we reverse and remand for a new hearing.

---

[1] Undesignated statutory references are to the Penal Code.

1

The following facts are quoted from the opinion of this court on defendant's first appeal from the judgment. (*People v. Torres* (Feb. 18, 2014, C069510) [nonpub. opn.] (*Torres*).)

"[I]n May 2008 [the victim Jose] Guerrero and his family, which included his wife, Celica, and two stepsons who were Sureño gang members, were living at [an address in Sacramento]. They had lived there for seven years.

"On Memorial Day, Guerrero was with some other family members in the garage and driveway area of his house when a group of young men walked up, including one wearing a red bandana across his face. That was [defendant], who is a Norteño gang member. Also in the group was Jose [Gonzalez (Jose)], who is also a Norteño gang member.

"[Defendant] challenged Guerrero's stepsons to come out and fight. Guerrero said he was going to call the police and pulled out his cell phone. A physical struggle between [defendant] and Guerrero ensued. At some point, [defendant] pulled out a gun. According to Guerrero's stepdaughter, Veronica, Guerrero was able to grab the gun and throw it away, but he threw it in the direction of the group that [defendant] came with. Another witness testified that Guerrero 'somehow hit the gun . . . out of [defendant's] hand, and it flew towards where the group was.' Guerrero's widow testified that it was [defendant] who 'threw [the gun] to where the others were at.'

"Another member of the group of young men picked up the gun and told Guerrero to let go of [defendant]. When he did not do so, the man fired a shot, hitting a nearby van. The man then stepped closer and shot Guerrero in the head.

"The People charged seven individuals, including [defendant] and . . . Jose . . . with Guerrero's murder. . . . In late August 2011, [defendant] and Jose (along with another defendant who was ultimately acquitted) went to trial. . . .

"The prosecutor argued there was 'high confidence that the gunman, the actual killer was [Jose]' and that the shooter committed first degree murder. The prosecutor further argued that to the extent they did not pull the trigger, the defendants were guilty of the murder either because they aided and abetted the murder or because they committed or aided and abetted the

crime of fighting or challenging to fight and the murder was a natural and probable consequence of that crime.

"The jury found both [defendant] and Jose guilty of first degree murder and found true" a gang enhancement allegation and a firearm enhancement allegation. The trial court sentenced defendant to 50 years to life. (*Torres*, *supra*, C069510.)

On defendant's first appeal from the judgment, another panel of this court "agree[d] with [defendant] that the jury instructions were erroneous because they did not allow the jury to consider whether the defendants might have been guilty of only second degree murder under the natural and probable consequence doctrine, even if the shooter committed first degree murder." (*Torres*, *supra*, C069510.) This court reversed defendant's and Jose's convictions and remanded for retrial unless the People accepted reduction of the convictions to second degree murder. (*Ibid.*)

"The People elected not to seek retrial and instead accepted reduction of defendant's conviction to second degree murder. The trial court accepted the remittitur as a modification of the judgment to reflect a conviction for second degree murder, and resentenced defendant to 40 years to life in state prison . . . ." (*People v. Torres* (Nov. 16, 2015, C078058) [nonpub. opn.].)

In 2019, defendant filed a petition for resentencing pursuant to section 1170.95. In the form petition, defendant checked boxes indicating: (1) "A complaint, information, or indictment was filed against me that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine"; (2) "At trial, I was convicted of 1st or 2nd degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine"; and (3) "I could not now be convicted of 1st or 2nd degree murder because of changes made to Penal Code §§ 188 and 189, effective January 1, 2019." Defendant requested the appointment of counsel. Concluding defendant met his prima facie burden, the trial court issued an order to show cause and set the matter for a hearing.

In their opening brief, the People asserted defendant was ineligible for relief because he could still be convicted of malice murder. According to the People, the two valid theories

3

under which defendant could still be convicted were as a direct aider and abettor of express or implied malice murder, and as a direct perpetrator of implied malice murder.[2] With regard to aiding and abetting express or implied malice murder, the People asserted the evidence supported the conclusion Jose shot Guerrero and defendant had the intent that such lethal violence be used against Guerrero as demonstrated by the gang evidence and defendant's actions before and after the shooting. The People asserted the evidence supported a finding that defendant and Jose acted with malice aforethought in assaulting Guerrero with a firearm "and that each was aware of the other's malice." The People continued: "At a minimum, [defendant] intended to, and in fact did, aid and abet Jose in committing an act, the natural consequence of which was dangerous to human life with conscious disregard for human life and thus is guilty of aiding and abetting implied malice murder."

Defendant countered that the People failed to prove malice. Specifically, he asserted the People failed to prove that he knew Jose would shoot Guerrero when he picked up the gun, that defendant "actually aided the murder," that defendant intended to aid the murder, and that he acted with conscious disregard for human life. Defendant also addressed the issue of who threw the gun to Jose, emphasizing the conflicting evidence on the subject. Moreover, according to defendant, even if he threw the gun, nothing more than speculation supported the premise that he did so intending that Jose shoot and kill Guerrero. Defendant further asserted the People could not establish he would be guilty of implied malice murder because there was no evidence he "actually appreciated that death was a consequence of his action" or that he consciously disregarded that danger.

At the hearing, the People asserted there were three grounds on which to deny defendant's petition: (1) "direct perpetration"; (2) as a direct aider and abettor based on Celica's testimony defendant threw the gun to Jose; and (3) aiding and abetting "while he was being held by the victim." Relying on *People v. Gentile* (2020) 10 Cal.5th 830, the People

---

[2] For purposes of resolving defendant's appeal, we need not address the People's contention defendant could be convicted as a direct perpetrator of implied malice murder.

4

contended defendant committed the crime of aiding and abetting implied malice murder; defendant shared in the shooter's culpable mental state that the shooter "was going to do an act that was inherently dangerous and act with conscious disregard for human life."

Defense counsel argued that a primary issue was who threw the gun. Defense counsel emphasized that Celica, Veronica, and a third witness all told police after the shooting that defendant did not throw the gun, but rather Guerrero either knocked the gun from defendant's hand or grabbed it and threw it. Defense counsel emphasized Celica was the only witness to testify at trial that defendant threw the gun. However, her testimony contradicted what she had previously told a police detective in her native Spanish. Defense counsel argued that Celica's testimony could not be credited and, even if it could, the prosecution still failed to prove conscious disregard and the subjective awareness that the gun would be used to kill someone. Defense counsel further asserted there was no evidence defendant was subjectively aware of the high probability of death.

The trial court denied the petition, concluding defendant "does not satisfy" the requirement that he "could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a)(3).) We discuss the trial court's decision in greater detail, *post*.

## DISCUSSION

### I

### *Senate Bill No. 1437*

"Murder is the unlawful killing of a human being, or a fetus, with malice aforethought." (§ 187, subd. (a).) "For purposes of Section 187, malice may be express or implied." (§ 188, subd. (a).) Prior to the enactment of Senate Bill No. 1437, "the natural and probable consequences doctrine rendered a defendant liable for murder if he or she aided and abetted the commission of a criminal act (a target offense), and a principal in the target offense committed murder (a nontarget offense) that, even if unintended, was a natural and probable consequence of the target offense." (*People v. Lamoureux* (2019) 42 Cal.App.5th 241, 248.)

On September 30, 2018, the Governor signed Senate Bill No. 1437, which became effective January 1, 2019. Senate Bill No. 1437 was enacted "to amend the felony murder rule[3] and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) Senate Bill No. 1437 achieved this by amending sections 188 and 189.

Relevant here, subdivision (a)(3) of section 188 now provides: "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." Thus, following enactment of Senate Bill No. 1437, and where, as here, the felony-murder rule is not at issue, a person must act with malice to be convicted of murder. (§ 188, subd. (a)(3); see *In re R.G.* (2019) 35 Cal.App.5th 141, 144.)

Senate Bill No. 1437 also authorized, through newly enacted section 1170.95, an individual convicted of felony murder or murder based on the natural and probable consequences doctrine to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he or she could not have been convicted of murder because of Senate Bill No. 1437's changes to sections 188 or 189. (See *People v. Lewis* (2021) 11 Cal.5th 952.)

Upon the submission of a section 1170.95 petition: "The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within

---

**3**    Felony murder is not at issue here. The prosecutor's theories at trial relative to defendant were based on direct aiding and abetting or that defendant "committed or aided and abetted the crime of fighting or challenging to fight and the murder was a natural and probable consequence of that crime." (*Torres*, *supra*, C069510.) The prosecutor did not rely on a felony-murder theory, and with good reason: fighting in a public place or challenging another person to fight in a public place, the crime relied upon for the natural and probable consequences theory, is not a felony. (§ 415, subd. (1).)

the provisions of this section." (§ 1170.95, subd. (c).) "If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause." (*Ibid*.)

## II

### *The Applicable Standard Of Review*

Where, as here, the trial court concludes the petitioner has made a prima facie showing and issues an order to show cause: "At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing. If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges. The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens." (§ 1170.95, subd. (d)(3).)

In an opinion that has since been ordered depublished or not citable by our Supreme Court (see Cal. Rules of Court, rule 8.1115(e)(3)), the first then-published Court of Appeal case to consider the standard of review for a trial court considering a section 1170.95 petition at a hearing after an order to show cause issues settled on a standard essentially identical to substantial evidence review. That would require only that the trial court determine the prosecution proved, beyond a reasonable doubt, the defendant *could* still have been convicted of murder by a reasonable jury.

Thereafter, several other cases, which have also since been ordered depublished or not citable, disagreed with the application of a standard essentially identical to substantial evidence review. In those cases, the courts concluded that section 1170.95 requires the prosecutor to prove each element of first or second degree murder under the law as amended beyond a reasonable doubt in order to establish ineligibility. In other words, these cases concluded it is the trial court's responsibility to act as independent fact finder and determine whether the evidence establishes a petitioner would be guilty of murder under sections 188 and 189 as amended, and is thus ineligible for resentencing under section 1170.95.

7

We agree with the parties that the "independent fact finder" standard, as opposed to the "substantial evidence" standard, is the appropriate standard of review. (See *People v. Garrison* (Dec. 17, 2021, B308319) ___Cal.App.5th___ [2021 Cal.App. Lexis 1111] [the split of authority has been resolved by actions of both the Supreme Court and the Legislature; the trial court, acting as an independent fact finder, must determine, beyond a reasonable doubt, whether the defendant is guilty of murder under a valid theory]; *People v. Ramirez* (2021) 71 Cal.App.5th 970, 984 [the trial court must act as independent fact finder and determine whether the evidence establishes the petitioner would be guilty of murder under §§ 188 and 189 as amended and is thus ineligible for resentencing under § 1170.95, subd. (d)(3)].) We conclude that, in considering a section 1170.95 resentencing petition after issuing an order to show cause, the trial court is required to independently determine that *it would* convict the defendant on a theory that remains viable under sections 188 and 189 as amended, not merely that *a reasonable jury could* find the defendant guilty on such a theory.

III

*Additional Background -- The Trial Court's Order*

In its order, the trial court stated defendant was not eligible for section 1170.95 relief because "he does not satisfy" the third requirement of section 1170.95, that he "could not be convicted of first or second degree murder because of changes to Section 188 or 189 . . . ." (§ 1170.95, subd. (a)(3).) The court stated: "Defendant . . . *cannot make this showing* because his murder conviction still holds up under the current law." (Italics added.)

The trial court noted defendant's jury had been instructed on two theories: direct aiding and abetting and the natural and probable consequences doctrine. The court recounted the events leading up to and including the altercation, as well as the gang evidence. The court credited Celica's testimony that defendant threw the gun to his companions. The court stated: "There was sufficient evidence to support the conclusion the person who picked up the firearm was . . . Jose . . . ." The shooter then shot the victim, killing him. The trial court also emphasized defendant's close relationship with Jose and their shared Norteño gang affiliation.

8

The trial court concluded: "Based on all of the facts and circumstances presented at the trial and during the hearing it is evident [defendant] is not eligible for relief under section 1170.95, as a review of the evidence indicates he could still be found guilty of murder under a theory of liability that remains valid and upon which the jury was instructed." The court concluded that, under the holding of either line of cases that have since been depublished, discussed *ante*, "the conclusion is the same."

IV

*The Standard Of Review Employed By The Trial Court*

Defendant asserts "the trial court applied the wrong standard or failed to meaningfully employ *any* standard at all." Defendant emphasizes the court did not identify the standard of review it was employing, instead it merely stated its conclusion would be the same under either standard. Additionally, while stating defendant could still be found guilty of murder under a valid theory, the court did not identify that theory and it did not expressly make any finding beyond a reasonable doubt. Defendant also asserts the court improperly shifted the burden of proof.

Upon reviewing the hearing and the trial court's order, we cannot say with any assurance what standard of review the court applied or whether it found the evidence established, beyond a reasonable doubt, defendant would be guilty of murder under amended sections 188 or 189 and was thus ineligible for resentencing.

The trial court did not state the standard of review it was applying. Although the court recited what the evidence "demonstrated," "showed," and "established," it never set forth its standard of review.

The court did not once articulate the beyond-a-reasonable-doubt standard of review, whether in the context of the prosecution's burden of proof or its standard of review in considering the evidence as independent fact finder.

The court's conclusion was that "a review of the evidence indicates [defendant] *could still be found guilty* of murder under a theory of liability that remains valid and upon which the jury was instructed." (Italics added.) This evokes the substantial evidence standard of review

9

we have rejected.  The court's language does not suggest an exercise in independent factfinding.  The court also stated there "was *sufficient evidence* to support the conclusion the person who picked up the firearm was" Jose.  (Italics added.)  This language, too, evokes the substantial evidence standard of review.

In one instance, the court's order can be read as suggesting defendant bore the burden of proof.  The court discussed the requirement that the "petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 . . . ."  (§ 1170.95, subd. (a)(3).)  The court stated:  "Defendant . . . *cannot make this showing* because his murder conviction still holds up under the current law."  (Italics added.)  However, at the hearing, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing."  (§ 1170.95, subd. (d)(3).)

The trial court also did not articulate which "theory of liability that remains valid and upon which the jury was instructed" it relied upon in making its decision.

The court cited *Rodriguez*, which we have concluded articulates the proper standard of review.  However, it also invoked the no longer citable case which settled on substantial evidence review.  The court stated its conclusion would be the same under either standard.

In sum, the trial court did not articulate the standard of review it was applying, never invoked the beyond-a-reasonable-doubt standard, arguably invoked the substantial evidence standard of review and shifted the burden of proof, did not state what still-valid theory of murder applied, and cited cases with differing standards of review.  It is unclear whether the court employed the correct standard of review in making its determinations and found, beyond a reasonable doubt, as an independent fact finder, that it would convict defendant on a theory that remains viable following the amendment of sections 188 and 189.  (See *People v. Garrison*, *supra*, ___Cal.App.5th at p. ___ [2021 Cal.App. Lexis 1111]; *People v. Ramirez*, *supra*, 71 Cal.App.5th at p. 984.)  The cursory statement that the result would be the same under either standard is insufficient to reassure us that the court applied the appropriate standard of review and engaged in the requisite independent factfinding.

10

Accordingly, we must reverse the order denying the petition and remand the matter to the trial court for a new section 1170.95, subdivision (d)(3) hearing under the correct standard. At the new hearing, the parties should be afforded the opportunity to present additional evidence, should they so request.

We reject defendant's contention that remand is inappropriate and that we must vacate his murder conviction. Defendant misplaces reliance on the rule that, "when a reversal rests upon the ground that the prosecution has failed to produce sufficient evidence to prove its case, the Double Jeopardy Clause bars the prosecutor from making a second attempt at conviction." (*Tibbs v. Florida* (1982) 457 U.S. 31, 42 [72 L.Ed.2d 652, 661].) Even if this rule applied in this context, our determination is not that the prosecution failed to proffer legally sufficient evidence, but rather that it is not clear the trial court employed the correct standard of review. Nor do we accept defendant's invitation to "find that [he] prevails under any standard of review."

In light of our determination and this open remand, we need not reach defendant's substantial evidence claim, his claim addressed to the theory of aiding and abetting an implied malice murder, or his claim that his petition may have been denied based on an invalid legal theory.

V

*Res Judicata And Double Jeopardy*

Defendant asserts, essentially, that a finding that the trial court would convict him under direct aiding and abetting principles is precluded as a matter of law, and that the only other theory on which the jury was instructed was the now-invalid natural and probable consequences doctrine. Therefore, he asserts, in effect, that the trial court was precluded as a matter of law from denying his petition.

Defendant contends that a finding that the trial court would still convict him of *first degree* murder is precluded by double jeopardy and res judicata principles. He bases this claim on this court's reversal of his first degree murder conviction on his first appeal and the reduction to second degree murder. (*Torres*, *supra*, C069510.) He claims that, under *Gomez v.*

11

*Superior Court* (1958) 50 Cal.2d 640, this was the functional equivalent of an acquittal of first degree murder. Even assuming these principles apply to the discrete issues presented at a section 1170.95 resentencing hearing, a question we ultimately need not answer here, we conclude that denial of defendant's petition was not precluded as a matter of law because defendant could still be convicted of directly aiding and abetting *second degree* murder.

Defendant claims the trial court could not find he could still be convicted of directly aiding and abetting second degree murder because the perpetrator was convicted of first degree murder. According to defendant, under *People v. Perez* (2005) 35 Cal.4th 1219 and *People v. McCoy* (2001) 25 Cal.4th 1111, he "could not have a lesser degree of culpability than the perpetrator."

Contrary to defendant's representations that the perpetrator was convicted of, or "guilty of," first degree murder, Jose's conviction was also reversed and reduced to second degree murder, subject to the People's election as to whether to retry him on the premeditation and deliberation element of first degree murder. (*Torres*, *supra*, C069510.) If Jose was the perpetrator, he does not stand convicted of first degree murder. To the extent defendant would claim another individual was the shooter, the record does not establish any first degree murder conviction. Thus, even if defendant were correct that he could not have a lesser degree of culpability than the perpetrator, the record does not establish a perpetrator was convicted of first degree murder. We note that, even if the perpetrator's first degree murder verdict remained, it is not clear this would preclude finding defendant still could be convicted of second degree murder *for purposes of weighing a section 1170.95 petition*. In any event, because Jose's first degree murder conviction has been reversed, we need not decide the issue.

Defendant states that he could not have been "convicted of second degree murder as a direct accomplice." In addition to his claim he could not be guilty of a lesser offense than the perpetrator, defendant's contention also appears to be based on this court's decision on his first appeal, which stated: "the jury instructions were erroneous because they did not allow the jury to consider whether the defendants might have been guilty of only second degree murder *under the natural and probable consequence doctrine*, even if the shooter committed first degree

12

murder." (*Torres*, *supra*, C069510, italics added.)  Defendant asserts:  "If appellant could conceivably have been convicted of second degree murder as a direct accomplice of murder then the instructional error would have applied to *both* theories of liability."  However, the language quoted from this court's opinion on defendant's first appeal addressed only the contention he advanced on that appeal:  "that the jury instructions were erroneous because they did not allow the jury to consider whether he might have been guilty of only second degree murder under the natural and probable consequence doctrine, even if the shooter was guilty of first degree murder." (*Torres*, *supra*, C069510.)  The jury was also instructed with CALCRIM No. 400 on the general principles of aiding and abetting and CALCRIM No. 401 on direct aiding and abetting.  This court was not asked to, and did not, make any determination as to the instructions in relation to direct aiding and abetting.  The quoted language from this court's prior opinion on defendant's first appeal does not preclude a trial court finding defendant would be guilty of second degree murder on a direct aiding and abetting theory based on res judicata, the law of the case, or any other theory.

In short, nothing about Jose's original conviction, or this court's prior opinion, establishes, as a matter of law, defendant "could not be convicted" of second degree murder under a direct aiding and abetting theory.  (§ 1170.95, subd. (a)(3).)  The denial of defendant's petition is not precluded by double jeopardy or res judicata principles.

DISPOSITION

The order denying defendant's petition is reversed.  The case is remanded for the trial court to conduct a new hearing under section 1170.95, subdivision (d)(3).

/s/ _____
Robie, J.

We concur:

/s/ _____
Raye, P. J.

/s/ _____
Hull, J.

13